Nos. 22-1392 & 22-1442

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

———————————

**UNITED STATES OF AMERICA**,
PLAINTIFF-APPELLEE,

v.

**JEFFREY SCOTT TAYLOR**,
DEFENDANT-APPELLANT.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

HONORABLE RAYMOND P. MOORE
D.C. No. 22-CR-00162-RM

HONORABLE JOHN L. KANE
D.C. No. 13-CR-00400-JLK

———————————

**UNITED STATES' ANSWER BRIEF**

———————————

COLE FINEGAN
United States Attorney

RAJIV MOHAN
Assistant U.S. Attorney
1801 California Street
Suite 1600
Denver, CO 80202
Telephone: (303) 454-0100

Attorneys for Appellee

**ORAL ARGUMENT IS NOT REQUESTED**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT OF RELATED CASES ........................................................ v

JURISDICTIONAL STATEMENT ............................................................. v

STATEMENT OF THE ISSUES.................................................................. 1

STATEMENT OF THE CASE .................................................................... 2

    I.   Taylor is convicted in the state for firing shots in a
       drive-by shooting and robbing a Pizza Hut at
       gunpoint ....................................................................... 2

    II.  Taylor is sentenced to 120 months on his first
       federal felon-in-possession conviction....................................... 2

    III. Taylor is sentenced to 80 months on his next felon-
       in-possession conviction, plus 12 months for
       violating supervised release ......................................... 3

    IV. Taylor pleads guilty to another felon-in-possession
       charge in this case........................................................ 4

    V.  Taylor is sentenced to 108 months ............................................ 5

SUMMARY OF ARGUMENT ...................................................................... 8

ARGUMENT ........................................................................................... 11

    I.   Taylor did not preserve any procedural-error claim
       below. His failure to argue plain error in his
       opening brief means that he has waived the claim................ 11

    II.  The district court did not commit procedural error.
       Any error was harmless............................................. 15

         A.  The claimed error is not procedural. Taylor
            claims only procedural error .............................. 16

B.  The district court did not abuse its discretion anyway ..................................................................... 20

  1.  *The district court reasonably considered Taylor's prior supervised-release sentence under the § 3553(a) factors* ........................................... 20

  2.  *The district court was not required to subtract 12 months to account for a future supervised-release sentence* ............................................ 23

C.  Any procedural error was harmless ................................. 26

Conclusion ......................................................................... 29

Certificate of Compliance .............................................. 30

Certificate of Service ................................................... 31

# TABLE OF AUTHORITIES

## Federal Cases

*Gall v. United States,*
  552 U.S. 38 (2007) ............................................................................... 25

*United States v. Barnes,*
  890 F.3d 910 (10th Cir. 2018) ........................................................... 19

*United States v. Conlan,*
  500 F.3d 1167 (10th Cir. 2007) ......................................................... 19

*United States v. Farley,*
  36 F.4th 1245 (10th Cir. 2022) .................................................... 16, 19

*United States v. Gieswein,*
  887 F.3d 1054 (10th Cir. 2018) ............................................ 26, 27, 28

*United States v. Huckins,*
  529 F.3d 1312 (10th Cir. 2008) ................................................... 15, 20

*United States v. Kristl,*
  437 F.3d 1050 (10th Cir. 2006) ......................................................... 19

*United States v. Leffler,*
  942 F.3d 1192 (10th Cir. 2019) ................................................... 15, 20

*United States v. Lente,*
  647 F.3d 1021 (10th Cir. 2011) ............................... 11, 14, 16, 17, 18

*United States v. Martinez-Palomino,*
  775 F. App'x 423 (10th Cir. 2019) (unpublished) ............................ 21

*United States v. McComb,*
  519 F.3d 1049 (10th Cir. 2007) ......................................................... 20

*United States v. Mendoza,*
  543 F.3d 1186 (10th Cir. 2008) ................................................... 12, 14

*United States v. Morgan,*
  635 F. App'x 423 (10th Cir. 2015) (unpublished) ....................... 23-24

iii

*United States v. Romero*,
  491 F.3d 1173 (10th Cir. 2007) ......................................................... 13

*United States v. Rosales-Miranda*,
  755 F.3d 1253 (10th Cir. 2014) ......................................................... 29

*United States v. Winder*,
  557 F.3d 1129 (10th Cir. 2009) ......................................................... 12

*United States v. Wittig*,
  528 F.3d 1280 (10th Cir. 2008) ......................................................... 18

## Federal Statutes & Rules

18 U.S.C. § 922 ........................................................................................ 2

18 U.S.C. § 924 ........................................................................................ 3

18 U.S.C. § 3231 ...................................................................................... v

18 U.S.C. § 3553 ........................................................................... 9, 10, 23

18 U.S.C. § 3583 .................................................................................... 24

18 U.S.C. § 3742 ...................................................................................... v

28 U.S.C. § 1291 ...................................................................................... v

U.S.S.G. Ch. 7 ................................................................................. 22, 23

U.S.S.G. § 4B1.4 ...................................................................................... 6

## STATEMENT OF RELATED CASES

Taylor was party to the following prior appeals in this court:

*United States v. Taylor*, No. 04-1048; *United States v. Taylor*,

Nos. 14-1285 & 14-1286; *In re Taylor*, No. 16-1175; and *United States*

*v. Taylor*, No. 16-1350.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 18 U.S.C. § 3231 and

entered final judgment on November 2, 2022. I:21. Taylor timely filed

a notice of appeal the next day. I:28. This court has jurisdiction

under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. [1]

---

[1] This brief cites to the record on appeal in No. 22-1392 by
volume and page number: *e.g.*, "I:13" refers to volume I, page 13.
Citations to the record on appeal in No. 22-1442—Taylor's
supervised-release case—are distinguished by the notation "SRV":
*e.g.*, "SRV I:13."

## STATEMENT OF THE ISSUES

Jeffrey Scott Taylor, a convicted felon, possessed a gun while on supervised release. He pleaded guilty to a felon-in-possession charge and was sentenced to 80 months. He also received a consecutive 12 months for violating supervised release.

After Taylor served those sentences, he possessed another gun while on supervised release and pleaded guilty to another felon-in-possession charge. The district court sentenced him to 108 months. In part, the court reasoned that a sentence of more than 92 months—the amount of time Taylor had just served—was necessary to deter him and protect the public from his further crimes. Taylor argued for a lower sentence, but did not claim any procedural error.

On appeal, Taylor claims that the district court committed procedural error. He argues that the court set a 92-month sentencing baseline that was unreasonable because it included Taylor's prior supervised-release sentence.

1. Did Taylor preserve a procedural challenge to his sentence?

2. Did the district court procedurally err in considering Taylor's prior supervised-release sentence?

## STATEMENT OF THE CASE

### I.  Taylor is convicted in the state for firing shots in a drive-by shooting and robbing a Pizza Hut at gunpoint.

Taylor's history with guns dates back to 1991, when he was convicted of second-degree assault. Taylor fired shots during a gang-related drive-by shooting that left several innocent bystanders "in the line of fire[.]" II:103. Earlier in the evening, Taylor had confronted the target of the shooting, hit him in the head with a gun, and said, "I'm going to kill you." II:103.

The same year, Taylor was convicted of robbery. He drunkenly went to a Pizza Hut and, when informed that the restaurant was closed, pulled out a handgun and asked, "Do you want to die?" II:104. He forced an employee to make him three pizzas and added, "I'll kill you if you take too long." II:104.

### II.  Taylor is sentenced to 120 months on his first federal felon-in-possession conviction.

In 2003, Taylor earned his first federal conviction when he pleaded guilty to possession of a firearm by a convicted felon. II:106; 18 U.S.C. § 922(g)(1). During an argument with his sister, Taylor fired a handgun at an apartment door. II:107. When officers arrived, they found three bullet holes in the door and Taylor's sister on the

2

floor bleeding. II:107. One of the bullets had gone through her upper arm and side. II:107.

Taylor was initially sentenced to 235 months under the Armed Career Criminal Act (ACCA). II:106; III:7-8. If a defendant has three prior violent felonies or serious-drug offenses, the Act lifts the statutory maximum for a felon-in-possession charge (ten years at all times relevant to this appeal) and imposes a 15-year mandatory-minimum sentence instead. 18 U.S.C. § 924(e).

District Judge John L. Kane later reduced Taylor's sentence to 120 months because one of Taylor's ACCA predicates no longer qualified after a change in the law. II:106; III:8. Taylor was also sentenced to supervised release. II:106.

## III.  **Taylor is sentenced to 80 months on his next felon-in-possession conviction, plus 12 months for violating supervised release.**

Taylor found himself in federal court again in 2013, where he again pleaded guilty to a felon-in-possession charge. II:108. One of Taylor's relatives called the police to report that he began arguing with other family members. II:108. Officers tried to talk to Taylor outside. II:109. He ignored them and bent down to ditch a loaded

handgun. II:109. Taylor was on supervised release in the 2003 case when he committed the new offense. III:9.

Judge Kane sentenced Taylor to 80 months and additional supervised release on the criminal charge. II:108. Judge Kane also revoked Taylor's supervised release in the 2003 case and sentenced him to a consecutive 12 months for those violations. III:9.

## IV.  Taylor pleads guilty to another felon-in-possession charge in this case.

Taylor served both sentences and began his latest term of supervised release in 2020. II:108.

Before long, there was a warrant out for his arrest. Taylor got into an argument with his niece in September 2021, pulled a gun on her, and racked the slide. II:98. Taylor then chased her as she and others fled. II:98. When he caught up to her, he reached inside her car and pointed the gun at her while yelling. II:98. She threatened to call the police, which led Taylor to flee. II:98. As he drove away, he pointed the gun out the window. II:98.

Taylor remained at large until April 9, 2022, when someone called the police to report that Taylor had stopped by covered in blood with a firearm also covered in blood. II:98. Officers searched

Taylor's apartment and found bloody clothing and a bloody pistol. II:98. They arrested Taylor on the outstanding warrant. II:98.

Ballistics information revealed that the pistol had been used in a shooting just hours before Taylor's arrest. II:99. A woman told the police that a man—later identified as Taylor—tried to flirt with her. II:98; III:16. When she spurned his advances, he became angry and threatened her. II:98. She hid in a bathroom and heard a gunshot. II:98. Taylor left with a gunshot wound to his hand. II:98.

For his conduct on April 9, 2022, Taylor accrued yet another felon-in-possession charge. I:3. The case was assigned to District Judge Raymond P. Moore. I:3. Taylor pleaded guilty. III:88-89.

Meanwhile, probation sought to revoke Taylor's supervised release in the 2013 case based on the incidents described above, as well as Taylor's drug use. SRV I:135-138. That case remained with Judge Kane. SRV I:135.

## V.    Taylor is sentenced to 108 months.

The criminal case went to sentencing first. The undisputed guidelines range was 37-46 months. II:123. Taylor asked for 41

months. II:163. Both the government and probation recommended the statutory maximum of 120 months. II:123; II:155.

Before sentencing, Taylor was convicted of felony menacing in the state. II:101. That gave him three violent felonies under ACCA. II:101. But because Taylor was convicted of the third one after he committed the felon-in-possession offense, no one sought to apply the Act or a corresponding guideline increase. II:101; U.S.S.G. § 4B1.4.

At sentencing, Judge Moore counted "so many ways that I could say that 120 is the right number." III:38. One way was to "analogize … to ACCA[.]" III:38. Taylor had three violent felonies and, even if he was technically ineligible for the Act's enhanced penalties in the present case, he merited the highest sentence otherwise available given his record. III:38. Another way was to "look at a full picture" of Taylor's history, which depicted a defendant "who is going to kill somebody." III:38. The court observed, "everywhere I look, conflict, conflict, conflict. And when that conflict becomes armed conflict, it has the potential for being deadly." III:52.

The court also discussed Taylor's prior federal sentences. Given the procedural complications, the court did not place much weight on

the 235 turned 120-month sentence in the 2003 case. III:41. When it came to the 80-month criminal and 12-month supervised-release sentences that Taylor had recently served, the court asked why it should sentence Taylor to less than 92 months when that amount "rolled off his back like water off a duck[.]" III:49. The court reasoned that a greater sentence was necessary to deter Taylor and fulfill the court's "obligation to protect the public." III:49.

Taylor's counsel noted that 92 months included the 12-month supervised-release sentence. III:47. She admitted, "I understand why you're considering it in terms of the 92 months didn't do the trick[.]" III:48. But she argued that the court should "consider that" Taylor would "almost inevitably" receive additional imprisonment from Judge Kane in the pending supervised-release case. III:48.

The court responded that, to determine the sentence necessary to deter Taylor and protect the public from his further crimes, it made sense to view the prior sentences from Taylor's perspective. And what mattered to Taylor was "how much time did I get for having a gun on supervised release"—92 months—not how that time was apportioned between the criminal and supervised-release cases.

III:48. The court further reasoned that any future sentence in the pending supervised-release case was "Judge Kane's business." III:48.

In the end, although the court believed the "facts would support" 120 months, it sentenced Taylor to 108 months, with hope that "the extra year on the street doesn't cost someone." III:58. The court came below the statutory maximum to give Taylor credit for accepting responsibility. III:58.

In the supervised-release case, Judge Kane later sentenced Taylor to a consecutive 24 months. SRV I:158.

This appeal followed.

## SUMMARY OF ARGUMENT

Taylor believes that the district court set a 92-month sentencing baseline composed of his prior 80-month criminal sentence and his prior 12-month supervised-release sentence. He claims that this supposed baseline was unreasonable, and therefore procedural error, because it included the supervised-release sentence. In Taylor's view, the district court had to either consider just the prior criminal sentence or reduce his sentence to account for a future sentence in his pending supervised-release case.

**I.**     Taylor has waived this claim. To preserve a claim of procedural error, a defendant must specifically object to the district court's procedure. Taylor never objected on procedural grounds to the district court's consideration of his prior supervised-release sentence or the court's refusal to reduce his sentence to account for a future supervised-release sentence. Taylor generally raised these points in arguing for a lower sentence, but those substantive arguments did not preserve the procedural claim he raises on appeal. And his failure to argue plain error in his opening brief means that this court should consider the claim waived.

**II.**     Even if preserved, Taylor's procedural-error claim fails.

**A.**     As an initial matter, the asserted error isn't procedural. The district court considered Taylor's prior sentences to determine what sentence was necessary to deter him and protect the public from his further crimes under 18 U.S.C. § 3553(a). Which means that Taylor challenges the court's § 3553(a) analysis. And what he really challenges is the substance of that analysis: whether the district court had good reason to consider the supervised-release sentence. Any error in that respect was not procedural, and this court

shouldn't review Taylor's sentence for substantive reasonableness because he did not raise that issue in his opening brief.

**B.**    In any case, the district court did not abuse its discretion in considering the supervised-release sentence. That sentence involved the same conduct—Taylor's unlawful possession of a gun— as the prior criminal sentence and was served consecutively. The court considered both sentences to determine what amount of imprisonment had failed to deter Taylor before, which was relevant to determine what amount was necessary to deter him and protect the public from his further crimes now. Nothing about that analysis was so unreasonable as to deteriorate into an abuse of discretion.

Taylor fares no better on his alternative proposal that, if the district court considered the prior supervised-release sentence, it had to reduce his sentence to account for a future sentence in his pending supervised-release case. Section 3553(a)(2) requires a district court to consider the need for the "sentence imposed" to comply with such purposes as deterrence and protection of the public. The district court here correctly limited its analysis to the "sentence imposed" and not a sentence to be imposed later. Plus, any reduction to

10

account for a future sentence would have been speculative. Judge

Moore didn't know what sentence Judge Kane would impose.

     **C.**    And even if the district court committed procedural error,

it was harmless. The court justified its 108-month sentence against

the 120-month statutory maximum, not the prior sentences. The

court found that the facts supported a statutory-maximum sentence,

but went below that to give Taylor credit for accepting responsibility.

The facts to support that sentence were found in Taylor's extensive

criminal history, not any 12-month difference in how the court saw

his prior sentences.

<div align="center">

**ARGUMENT**

</div>

**I.**    **Taylor did not preserve any procedural-error claim
below. His failure to argue plain error in his opening
brief means that he has waived the claim.**

    This court reviews a sentence for procedural and substantive

reasonableness. *United States v. Lente*, 647 F.3d 1021, 1030 (10th

Cir. 2011). Procedural reasonableness "relates to the method by

which the sentence is calculated[,]" whereas substantive

reasonableness concerns "the sentence's length[.]" *Id.* (cleaned up).

<div align="center">

11

</div>

To preserve a procedural-error claim, a defendant must "specifically object to the district court's procedure[.]" *United States v. Mendoza*, 543 F.3d 1186, 1191 (10th Cir. 2008). The objection must be "definite enough to indicate to the district court the precise ground" for the complaint. *United States v. Winder*, 557 F.3d 1129, 1136 (10th Cir. 2009) (cleaned up).

The procedural error Taylor claims on appeal is that the district court set a 92-month sentencing baseline that was unreasonable because it included his prior 12-month supervised-release sentence. Taylor says the court had to either consider just his prior 80-month criminal sentence or subtract 12 months to account for a future sentence in Taylor's pending supervised-release case. Op. Br. 15, 18. Either way, by his estimate, correct procedures would have resulted in a 96-month sentence. Op. Br. 18.

Taylor did not preserve this claim below. He never expressly claimed any procedural error. He never said that he thought the court's sentence was tied to any baseline. He never said that any perceived baseline was so unreasonable as to be procedurally defective. He never argued that the court's sentencing method "was

12

inconsistent with the guidelines' policy statements" as he does on appeal. Op. Br. 16. And he never mentioned the 96-month sentence he now says would have been procedurally sound. Op. Br. 18.

Taylor also did not preserve his alternative argument that the district court had to subtract "12 months in order to account for Judge Kane's half of the sentencing package[.]" Op. Br. 18. Taylor sent mixed messages about whether the court should consider any future sentence in the supervised-release case. His counsel said, "I'm not saying that the court needs to consider that when crafting … a number." III:33. She then said the court should "consider that he's almost inevitably getting" more imprisonment in that case. III:48. What she never argued was that the court was procedurally bound to subtract any amount of time to account for a sentence Taylor had not yet received, let alone the precise figure of 12 months.

In sum, Taylor was never specific enough about any procedural error to "alert the district court and opposing counsel" so that the potential error could be addressed. *United States v. Romero*, 491 F.3d 1173, 1177 (10th Cir. 2007). If anything, his claim on appeal would come as a surprise to the district court given counsel's statements

below that, "I understand why you're considering it in terms of the 92 months didn't do the trick. I get that" and "I'm not asking this court to predict" Judge Kane's sentence. III:48.

True, counsel pointed out that the 92 months "include[d] supervised release" and that the court should "include it on both ends." III:47. But these arguments were directed to the appropriate length of sentence, which is a matter of substantive reasonableness. *Lente*, 647 F.3d at 1030. For example, counsel argued that the reason why it was "important" to exclude the supervised-release sentence was that Judge Kane would likely "impose some prison time" in the new supervised-release case, which warranted a lower sentence in the criminal case. III:33. Counsel later reiterated that a lower sentence was justified because Judge Kane would "almost inevitably" impose further imprisonment in the supervised-release case. III:48.

The problem for Taylor is that these "repeated substantive objections" did not "encompas[s] the required procedural objection." *Mendoza*, 543 F.3d at 1191. Nothing Taylor said was sufficiently definite to apprise the district court of the procedural error he claims on appeal. And Taylor can't use his substantive arguments below to

salvage that procedural claim. Forfeiture applies "not only when a litigant raises a new argument on appeal but also when a litigant changes to a new theory on appeal that falls under the same general category as an argument presented" below. *United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019) (cleaned up).

Taylor therefore failed to preserve his procedural-error claim. And his failure to argue plain error in his opening brief means that he has waived the claim. This court should not exercise its discretion to review it. *See Leffler*, 942 F.3d at 1199-1200.

## II.    **The district court did not commit procedural error. Any error was harmless.**

**Standard of review:** This court reviews a preserved procedural-error claim under a "deferential abuse-of-discretion standard." *United States v. Huckins*, 529 F.3d 1312, 1317 (10th Cir. 2008) (cleaned up). "A district court abuses its discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable." *Id.* (cleaned up).

**Argument:** Taylor's procedural challenge, again, rests on the premise that the district court tied his sentence to a 92-month

baseline that was unreasonable because it included his prior 12-month supervised-release sentence.

This claim of procedural error fails as a threshold matter because the error Taylor claims is not procedural. In any event, the district court did not abuse its discretion in considering the supervised-release sentence. And if it did, any error was harmless.

### A. The claimed error is not procedural. Taylor claims only procedural error.

As mentioned, procedural reasonableness concerns the "method by which the sentence is calculated." *Lente*, 647 F.3d at 1030 (cleaned up). Generally, "a district court commits procedural error when it misunderstands or misapplies the law." *United States v. Farley*, 36 F.4th 1245, 1250 (10th Cir. 2022) (cleaned up).

Specific examples include when a district court fails to or improperly calculates the guidelines, treats them as mandatory, fails to consider the § 3553(a) factors, or relies on clearly erroneous facts. *Lente*, 647 F.3d at 1030. A failure "to adequately explain the chosen sentence" is also procedural error. *Id.* (cleaned up).

Taylor doesn't argue that the district court committed any of these recognized procedural errors. Rather, he contends that the

district court announced a 92-month sentencing baseline that was unreasonable because it included his prior 12-month supervised-release sentence. Op. Br. 15.

But Taylor miscategorizes this putative error as procedural. The district court considered Taylor's prior sentences as part of its § 3553(a) analysis to determine what sentence was necessary to deter him and protect the public from his further crimes. III:49. The court reasoned that, because 92 months had just failed to deter Taylor from possessing another gun, a longer sentence was necessary this time around: "[H]e does the 80 plus 12, and he comes out, and while he's on supervised release, yet again, he arms himself." III:40.

Taylor accordingly challenges the district court's § 3553(a) analysis. But he does not contend that this analysis was procedurally deficient in the recognized sense that the court "failed to adequately explain" itself. *Lente*, 647 F.3d at 1030 (cleaned up). That is, he does not think the court needed to say more. Instead, he takes issue with what the court said. He contends that "[t]here was no good reason" to include the supervised-release sentence. Op. Br. 15.

In that respect, Taylor's "true complaint is with the substance of" the district court's explanation, "whether it presented a persuasive reason[.]" *Lente*, 647 F.3d at 1031. That's a question of substantive reasonableness. *Id.*; *see also United States v. Wittig*, 528 F.3d 1280, 1285 (10th Cir. 2008) ("A challenge to the sufficiency of the § 3553(a) justifications … raises a substantive challenge.").

Taylor's insistence that the district court set a sentencing "baseline" or "anchor" doesn't make his claim procedural. Op. Br. 11, 12. Whatever he means by those terms, the court did nothing more than consider the prior sentences as part of its § 3553(a) analysis. For example, contrary to Taylor's assertion, the court did not "add[ ] 16 months to its baseline" to reach a 108-month sentence as if through simple arithmetic. Op. Br. 15. Nor was there any indication that the court's sentence would have risen or fallen with any change in the supposed baseline. And the court did not view 92 months as any sort of mandatory minimum. *See*, *e.g.*, III:42.

Taylor's further attempt to pass his challenge off as a procedural one to the district court's sentencing "method" also fails. Op. Br. 12. The cases he cites in support only illustrate the

distinction between a genuine procedural challenge and Taylor's substantive one in disguise. Those cases involved improperly applying a presumption of reasonableness at the trial level, *United States v. Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007), miscalculating the guidelines, *United States v. Kristl*, 437 F.3d 1050, 1056-57 (10th Cir. 2006), and legally misunderstanding the extent of a variance under the guidelines, *Farley*, 36 F.4th at 1245.

Taylor cites no authority for the notion that this court should review the reasonableness of a particular aspect of the district court's § 3553(a) analysis as a procedural challenge, separate from any substantive challenge to the sentence's length. That would cloud the line between procedural and substantive reasonableness—a distinction that is not only "significant[,]" but also one which "courts should avoid unduly blurring[.]" *United States v. Barnes*, 890 F.3d 910, 916, 917 (10th Cir. 2018).

In short, the district court did not commit procedural error because the error Taylor asserts is not procedural. And since Taylor doesn't challenge the substantive reasonableness of his sentence in his opening brief, this court should not address his claim under that

framework. *See Leffler*, 942 F.3d at 1197 ("[W]e generally do not consider arguments made for the first time on appeal in an appellant's reply brief[.]").

## B. The district court did not abuse its discretion anyway.

Even if reviewed for procedural reasonableness, Taylor's claim fails. To put the claim in context, Taylor does not argue that the district court abused its discretion through any legal error. *See United States v. McComb*, 519 F.3d 1049, 1054 (10th Cir. 2007). He instead argues that the court's reasoning was so manifestly unreasonable that it descended to a pure abuse of discretion. *Huckins*, 529 F.3d at 317. In his view, the court's discretion extended no farther than the following choice: ignore the supervised-release sentence or subtract exactly 12 months. He's wrong.

### 1. *The district court reasonably considered Taylor's prior supervised-release sentence under the § 3553(a) factors.*

This court has "repeatedly held" as a matter of substantive reasonableness "that district courts do not abuse their discretion by considering the failure" of prior sentences to deter subsequent crimes "in determining that a sentence at least as long is required to serve

the purpose of deterrence." *United States v. Martinez-Palomino*, 775 F. App'x 423, 426-27 (10th Cir. 2019) (unpublished).

The district court reasonably applied that principle here. It explained that Taylor's criminal and supervised-release sentences involved the same conduct and were served consecutively. III:47-48. It reasoned that the combined 92-month length of those sentences had failed to deter Taylor because that total length is what a defendant would focus on more than how the time was allocated between the criminal and supervised-release sentences. III:40, 48 And the court therefore concluded that a sentence greater than 92 months was needed this time to afford adequate deterrence and protect the public from Taylor's further crimes. III:48.

This explanation was not so unreasonable that it sunk to an abuse of discretion. Even Taylor's counsel was able to see the court's point. She said, "I understand why you're considering it in terms of the 92 months didn't do the trick. I get that." III:48. She went on, "while I take the court's point … that doesn't mean that 92 months in prison had no impact on him." III:49. And while she urged the court

to not only consider "you're back, so you get more[,]" she admitted, "that's a reasonable position to take." III:49.

Taylor counters that the prior sentences had different purposes: the criminal one to punish the crime, the supervised-release one to sanction his breach of trust. Op. Br. 15. But he doesn't explain why that required the district court to ignore the supervised-release sentence altogether. The court wanted to determine what length of sentence had failed to deter Taylor before. Both sentences were relevant to that determination because they both involved the same conduct and ran consecutively.

For that reason, Taylor misfires when he says that the district court's reasoning was "inconsistent with the guidelines' policy statements." Op. Br. 16. The policy statements merely recognize that the "primary goal" of a supervised-release sentence is to sanction the defendant's breach of trust and that the punishment for a new crime should be left "to the court responsible" for that offense. U.S.S.G. Ch. 7, Pt. A.3(b). The policy statements don't establish any procedural rules for the district court's consideration of prior sentences under § 3553(a) in a future case.

In fact, the policy statements explain that "the nature of the conduct leading to the revocation would be considered in measuring the extent of the breach of trust." U.S.S.G. Ch. 7, Pt. A.3(b). Where, as here, the crime and the breach of trust involve the same conduct, it's not unreasonable to consider both sentences to assess deterrence and the need to protect the public from further crimes.

> 2. *The district court was not required to subtract 12 months to account for a future supervised-release sentence.*

Taylor alternatively argues that, if the district court wanted to consider the prior supervised-release sentence, it had to "consistently account for the second half of the sentencing package that would be completed by Judge Kane." Op. Br. 18. Taylor says the court was required to deduct exactly 12 months to do so. Op. Br. 18.

But § 3553(a)(2) requires the district court to consider "the need for the *sentence imposed*" to afford adequate deterrence, protect the public from further crimes, and so forth. (Emphasis added.) The district court correctly limited its consideration to the sentence imposed and not a sentence Judge Kane had yet to impose. The court may well have erred if it reduced Taylor's sentence based on consequences unrelated to the "sentence imposed." *See United States*

*v. Morgan*, 635 F. App'x 423, 444 (10th Cir. 2015) (unpublished) (procedural error where district court reduced sentence based on "collateral consequences" of conviction).

Moreover, any reduction to account for Judge Kane's sentence would've been speculative. Judge Kane had not yet imposed a sentence. And Judge Moore was not clairvoyant.

Taylor nonetheless contends that the court should have knocked off 12 months because "it was *undisputed* that Judge Kane would impose at least 12 months[.]" Op. Br. 17 (emphasis added). One might reasonably wonder how the length of a future sentence could be "undisputed" when Judge Kane had discretion to sentence Taylor anywhere between zero and two years. 18 U.S.C. § 3583(e)(3).

Sure enough, Taylor's characterization rests on Judge Moore's remarks that he would be surprised if Judge Kane imposed less than 12 months and his counsel's observation that it was "reasonable to predict" at least that length. III:31, 33, 48. Taylor's use of the word "undisputed" does scant justice to its actual meaning.

What was undisputed is that Judge Kane's sentence was anybody's guess. The district court recognized that. III:48-49. So did

24

Taylor's counsel in "not asking the court to predict" the future

sentence. III:48. And so did the government in emphasizing that any

prediction was "speculation." III:31. The district court was not

procedurally mandated to subtract 12 months based on conjecture.

\*      \*      \*

More generally, Taylor's claim would impose rigid procedural

constraints on a district court's consideration of prior sentences

under the § 3553(a) factors: The court can consider this type of

sentence, but not that one… if it considers that one it has to subtract

this amount… and so forth. That approach is inconsistent with the

sentencing court's discretion to "make an individualized assessment

based on the facts presented." *Gall v. United States*, 552 U.S. 38, 50

(2007). The court's reliance on prior sentences in applying the

§ 3553(a) factors should be measured by substantive-reasonableness

review which accommodates that discretion—not mathematical

formulas. *See* Op. Br. 18 ("it should have added 16 months *minus* 12

months … also reaching a 96-month sentence (80 + 12 + (16 − 12)).").

### C.    Any procedural error was harmless.

Procedural error is harmless "if the record viewed as a whole clearly indicates the district court would have imposed the same sentence had it not relied on the procedural miscue(s)." *United States v. Gieswein*, 887 F.3d 1054, 1061 (10th Cir. 2018). The government must prove harmlessness by a preponderance of the evidence. *Id.* Here, the district court would have imposed 108 months regardless of any difference in how it viewed Taylor's prior sentences.

To start, the district court justified its sentence by reference to the statutory maximum, not the prior sentences. *See Gieswein*, 887 F.3d at 1063 ("the statutory maximum … was the driving force"). The court explained there were "so many ways" it could say 120 months was "the right number." III:38. It further stated that the record "warrants an at or near statutory maximum" sentence. III:58. And it concluded that "the facts would support" that maximum sentence. III:58. The court came down by a year to give Taylor "some credit" for accepting responsibility, but reluctantly: "I just hope I'm right, and that the extra year on the street doesn't cost someone." III:58.

In addition, the court's justification for that sentence was based on a "thorough explanation" independent of the prior sentences. *Gieswein*, 887 F.3d at 1063. The court explained that its sentence "primarily involve[d] protection of the public[,]" which was based on a "full picture" of Taylor's history, which showed a defendant who is "going to kill somebody[.]" III:38, 62; *see also* III:38-42. The court also analogized to ACCA to explain that Taylor's prior convictions merited a sentence near the statutory maximum. III:38

Taylor's basic error is to think the district court's sentence was fixed to some anchor or baseline. Op. Br. 11, 12. Nothing in the record suggests as much. There is no indication that the court would have reached a 96-month sentence if only it had excluded the prior 12-month supervised-release sentence.

To the contrary, the district court relied on the prior sentences primarily to reject Taylor's arguments for a lower sentence. It was in response to those arguments that the court asked: "Why should I give him less than the 92 months[?]" III:49; *see also* III:47, 48. Even if the district court changed every "92" to "80," it still would have sentenced Taylor to more than either number. And how much more

did not turn on the difference between 80 and 92 months. The court itself suggested that difference didn't matter: "[H]owever you want to parse it out. Eighty plus 12, 92, whatever." III:40.

Finally, the nature of the putative error further confirms its harmlessness. The district court did not miscalculate the guidelines or otherwise misapply the law. It did not rely on clearly erroneous facts. And it did not fail to explain itself. Rather, the asserted procedural error comes down to some more amorphous notion of how the district court characterized the prior sentences—which is inherently less likely to affect the ultimate sentence.

Compare the error Taylor asserts with the more common procedural error of miscalculating the guidelines. The guidelines "form the essential starting point in any federal sentencing analysis" and so a calculation error "runs the risk of affecting the ultimate sentence[.]" *Gieswein*, 887 F.3d at 1061 (cleaned up). The same can't be said of any error in how the district court characterized Taylor's prior sentences. That was one consideration among many in the

district court's § 3553(a) analysis, and one with no independent legal

significance.[2]

<div align="center">

CONCLUSION

</div>

The court should affirm.


DATED: September 13, 2023

<div style="margin-left: 40%;">

Respectfully submitted,

COLE FINEGAN
United States Attorney

*/s/ Rajiv Mohan*
RAJIV MOHAN
Assistant U.S. Attorney

</div>

---

[2] If this court decides to review Taylor's claim for plain error, the above arguments establish that the district court did not commit plain error, and any error did not affect Taylor's substantial rights or the fairness, integrity, or public reputation of judicial proceedings. *See United States v. Rosales-Miranda*, 755 F.3d 1253, 1261-62 (10th Cir. 2014).

## CERTIFICATE OF COMPLIANCE

As required by Fed. R. App. P. 32(a)(7)(B)(i), I certify that the

**UNITED STATES' ANSWER BRIEF** is proportionally spaced and

contains <u>5,456 words</u>, according to the Microsoft Word software used

in preparing the brief.

<u>*/s/ Kayla Keiter*</u>
KAYLA KEITER
U.S. Attorney's Office

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit, using the appellate CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*/s/ Kayla Keiter*
KAYLA KEITER
U.S. Attorney's Office