**Case Nos. 22-1442 & 22-1392**

---

In the United States Court of Appeals
for the Tenth Circuit

---

**United States of America**,
Plaintiff-Appellee,

v.

**Jeffrey Scott Taylor,**
Defendant-Appellant.

---

On Appeal from the United States District Court
for the District of Colorado

The Honorable John L. Kane, Senior Judge
D.C. Case No. 1:13-cr-00400-JLK-1

The Honorable Raymond P. Moore, District Judge
D.C. Case No. 1:22-cr-00162-RM-1

---

**Appellant's Reply Brief**

---

Office of the Federal Public Defender    Virginia L. Grady
633 17th Street, Suite 1000              Federal Public Defender
Denver, Colorado 80202
Tel: (303) 294-7002                      Josh Lee
Fax: (303) 294-1192                      Assistant Federal Public Defender
Email: josh.lee@fd.org

                                         Attorneys for Appellant
                                         Jeffrey Scott Taylor

Oral argument is requested.

October 10, 2023

## Table of Contents

Reply Argument ................................................................................................. 1

I.      Mr. Taylor's Claim Is Preserved. ......................................................... 2

II.     Mr. Taylor's Appellate Claim Is One of Procedural
        Unreasonableness, Not Substantive Unreasonableness. ...................... 10

III.    The District Court's Methodology Was Unreasonable ......................... 13

IV.     The Government Has Not Shown That the Procedural Error Is
        Harmless. ............................................................................................. 20

Conclusion ........................................................................................................ 26

Certificate of Compliance ................................................................................. 27

# Table of Authorities

**Page**

## Cases

*Dean v. United States*, 581 U.S. 62 (2017)........................................................ 18

*Holguin-Hernandez v. United States*, 140 S. Ct. 762 (2020) ............................ 2

*United States v. Balbin-Mesa*, 643 F.3d 783 (10th Cir. 2011).......................... 8

*United States v. Benvie*, 18 F.4th 665 (10th Cir. 2021) ..................................... 8

*United States v. Cates*, 73 F.4th 795 (10th Cir. 2023) ...................................... 6

*United States v. Cerno*, 529 F.3d 926 (10th Cir. 2008) .................................. 13

*United States v. Cozad*, 21 F.4th 1259 (10th Cir. 2022) ................................. 10

*United States v. Eddington*, 65 F.4th 1231 (10th Cir. 2023)............... 20, 21, 25

*United States v. Farley*, 36 F.4th 1245 (10th Cir. 2022)..................... 11, 13, 23

*United States v. Hicks*, 146 F.3d 1198 (10th Cir. 1998).................................. 18

*United States v. Lente*, 647 F.3d 1021 (10th Cir. 2011) .................................. 10

*United States v. Mendoza*, 543 F.3d 1186 (10th Cir. 2008) .............................. 9

*United States v. Moore*, 30 F.4th 1021 (10th Cir. 2022) ................................. 12

*United States v. Morgan*, 635 F. App'x 423 (10th Cir. 2015).......................... 19

*United States v. Pressley*, 359 F.3d 347 (4th Cir. 2004).................................. 22

*United States v. Ruiz-Terrazas*, 477 F.3d 1196 (10th Cir. 2007) ..................... 9

*United States v. Walker*, 844 F.3d 1253 (10th Cir. 2017) ............................... 11

## Statutes

18 U.S.C. § 2259(c)(2) ..................................................................................... 15

18 U.S.C. § 3553(a)(2)(B) ................................................................................ 15

18 U.S.C. § 3553(a)(2)(C) .......................................................... 15, 18, 19, 22, 23

18 U.S.C. § 3572(a)(1) ............................................................................... 16

18 U.S.C. § 922(g) .......................... 1, 2, 3, 4, 6, 7, 10, 11, 17, 20, 21, 22, 24, 25

18 U.S.C. § 3572(a)(6) ............................................................................... 16

**Rules and Guidelines**

Fed. R. Crim. P. 51 ............................................................. 2, 3, 4, 6, 8, 10

U.S.S.G. § 1B1.1 n.1(K) ......................................................................... 16

U.S.S.G. § 5G1.3(b)(1) ........................................................................... 18

U.S.S.G. § 5G1.3(c) ............................................................................ 16, 18

**Other Authorities**

Mark W. Bennett, *Confronting Cognitive "Anchoring Effect" and "Blind Spot" Biases in Federal Sentencing: A Modest Solution for Reforming a Fundamental Flaw*, 104 J. Crim. L. & Criminology 489 (2014) ............. 24

## Reply Argument

Judge Moore permissibly decided that the sentence for Mr. Taylor's new offense should be longer than what Judge Kane imposed last time. But the way the judge went about implementing this idea was unreasonable.

Last time, in 2013, Judge Kane imposed an 80-month sentence for a conviction under 18 U.S.C. § 922(g) and an additional 12-month sentence for Mr. Taylor's violation of his supervised release. This time, in 2022, Judge Moore was only tasked with sentencing Mr. Taylor for a § 922(g) conviction, not with imposing an additional sentence for a supervised release violation. Despite this, Judge Moore treated the aggregate imprisonment previously imposed—92 months—as the baseline for Mr. Taylor's new sentence. At the same time, despite treating Mr. Taylor's prior § 922(g) and violation sentences as a package deal, Judge Moore categorically refused to factor in the new supervised release violation proceeding pending in front of Judge Kane when determining the new § 922(g) sentence.

Judge Moore's methodology was unreasonable because, as defense counsel explained below, a valid comparison required the judge to treat the violation sentences the same way "on both ends." Vol. III at 47-48. If Judge Moore wanted to disregard the new violation sentence that Judge Kane was expected to impose this time—and focus solely on sentencing Mr. Taylor for the § 922(g) conviction—then he needed to likewise disregard the prior

violation sentence and focus on the § 922(g) sentence that Judge Kane imposed last time. On the other hand, if Judge Moore wanted to include the prior violation sentence within the baseline—and consider the total sentence imposed in 2013—then he needed to likewise take the new violation sentence into account and consider the total sentence that would be imposed in 2022.

Mr. Taylor's opening brief challenged his sentence as infected with procedural error, and the government's answer brief presents four arguments against vacatur. It argues that (1) Mr. Taylor's claim is forfeited, (2) his complaint is substantive rather than procedural, (3) Judge Moore's methodology was reasonable, and (4) any error was harmless. For the reasons below, this Court should reject these arguments and remand for resentencing.

## I.    Mr. Taylor's Claim Is Preserved.

The government's primary argument (at 11-15) is that Mr. Taylor forfeited his challenge to how Judge Moore arrived at the new § 922(g) sentence. But the government's position is unmoored from the rule governing how a party preserves a claim of error, Fed. R. Crim. P. 51—a rule the answer brief does not even cite, much less apply. *See generally Holguin-Hernandez v. United States*, 140 S. Ct. 762, 764-77 (2020) (court of appeals erred by failing to apply the plain terms of Rule 51 to decide whether a defense attorney's remarks at a sentencing hearing sufficed to preserve a

claim of sentencing error). Under that rule, "[a] party may preserve a claim of error by informing the court . . . of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection." Fed. R. Crim. P. 51(b). Defense counsel's remarks at the sentencing hearing satisfy that test.

**First,** counsel preserved Mr. Taylor's argument that the court should have treated 80 months (the previous § 922(g) sentence), rather than 92 months (the 80-month sentence plus a violation sentence), as the relevant proxy for Mr. Taylor's new § 922(g) sentence. *See* Opening Br. at 11, 14-17.

When the district court opined that Mr. Taylor's 2022 sentence needed to be longer than his 2013 sentence, and then went on to assert that Mr. Taylor "got 92 months" in 2013, defense counsel immediately interjected: "Well, he got 80 [months]." Vol. III at 32-33. Counsel then sought to explain "the reason I'm going to harp on 80," and why "this is important." *Id*. at 33-34. And while her efforts to fully articulate her position were stymied by the district court's interruptions, defense counsel's insistence that the prior sentence was 80 months—presented in response to the district court's assertion that Mr. Taylor's new sentence needed to be longer than his prior sentence—made clear that she was asking the district court to treat 80 months as the benchmark. In other words, Mr. Taylor "inform[ed] the court

. . . of the action [he] wish[ed] the court to take": use 80 months as the comparator. Nothing more was required under Rule 51.

In any event, defense counsel additionally preserved Mr. Taylor's argument regarding the proper benchmark sentence by "informing the court . . . of . . . [Mr. Taylor's] objection to the court's action and the grounds for that objection." Fed. R. Crim. P. 51(b). By protesting that 80 months was the correct benchmark, and doing so in response to the court's proffer of 92 months, counsel made clear that Mr. Taylor objected to the court treating 92 months as the reference point. And counsel articulated the basis for this objection: that the court could not sensibly include the prior, 12-month violation sentence in the baseline given that the court had said earlier in the sentencing hearing that it would not consider, in fashioning Mr. Taylor's new § 922(g) sentence, the new violation sentence that the court knew Mr. Taylor would be receiving. Vol. III at 33 ("I think this is important, because the Court also said, well, I'm not going to consider what Judge Kane is going to do, although I think we can all safely assume Judge Kane is going to impose some prison time [for the new supervised release violation].").

**Second,** defense counsel preserved Mr. Taylor's complementary argument that, if the court was determined to include the prior violation sentence in the baseline, then, logically, it needed to also consider that Mr.

4

Taylor would be receiving a new violation sentence of at least 12 months. *See* Opening Br. at 11-12, 17-18.

Later in the hearing, after the district court again insisted on treating 92 months as the benchmark, defense counsel responded by stating, "Ninety-two includes supervised release. So, if you're going to do that [i.e., include the violation sentence in the baseline], you gotta include it on both ends." Vol. III at 47. Counsel continued: "What I'm saying is if you're going to consider it [i.e., the violation sentence] for the goose, you should consider it for the gander. The goose being the 2013 case, and the gander being now." *Id*. at 48. Counsel said that she understood the court's position that Mr. Taylor's total sentence should be more than his total sentence last time around, but she argued that, if the court was looking at things in terms of Mr. Taylor's total sentence, it had to "then consider that he's almost inevitably getting at least another year on top of whatever the Court is giving [in the case at bar]." *Id*.

Again, this sufficed to inform the court of the action Mr. Taylor wished the court to take: consider that the new violation sentence is a component of his new total sentence. And counsel's comments also constituted a more-than-sufficient objection to the court's refusal to do so. Indeed, counsel clearly explained the basis for that objection—namely, that refusing to consider the new violation sentence would be inconsistent with considering the prior

violation sentence as part of the baseline. Rule 51 does not require anything more.

The government's arguments for deeming Mr. Taylor's claim forfeited are unpersuasive.

**First,** the government strains credulity when it says (at 13) that Mr. Taylor's "claim on appeal would come as a surprise to the district court." As described above, defense counsel first contended that the relevant prior sentence was 80 months (just the prior § 922(g) sentence). Vol. III at 32-34. Subsequently, once the district court made clear that it would treat 92 months as the reference point, counsel argued in the alternative that, because the 92-month figure included the prior violation sentence, the court also needed to consider that Mr. Taylor would be receiving a new violation sentence of at least 12 months. *Id.* at 47-48. This is *exactly* what Mr. Taylor has claimed on appeal. *See* Opening Br. at 11-19. In short, "the claimed issue was brought to the court's attention" and thereby preserved. *United States v. Cates*, 73 F.4th 795, 809 (10th Cir. 2023) (internal alteration marks omitted).

The government contends, however, that defense counsel "sent mixed messages" about what she wanted the district court to do, quoting purportedly inconsistent remarks. Gov't Br. at 13-14, 21-22. In reality, though, the government has quoted statements out of context that are complementary when considered in their proper place. When counsel first

6

said that she was "not saying that the court needs to consider" the expected
new violation sentence, Vol. III at 33, that was during her primary argument
that Judge Moore should disregard the prior violation sentence because he
was only sentencing Mr. Taylor for the new § 922(g) conviction. *Id*. at 32-34.
And when counsel subsequently said that Judge Moore *should* consider the
expected new violation sentence, that was during her in-the-alternative
argument: *if* the court was determined to include the 2013 violation sentence
in the baseline, it should "then consider that [Mr. Taylor was] almost
inevitably getting at least another year" from Judge Kane. *Id*. at 47-48.
Similarly, when counsel said, "I understand why you're considering it in
terms of the 92 months," she did so in the context of explaining why the
court's own reasons for considering the total sentence that Mr. Taylor
received in 2013 logically entailed that it should then consider the total
sentence that he would receive this time. *Id*. There was nothing confusing
about the defense's position, and this Court should reject the government's
attempt to muddy the waters.

      **Next,** the government argues that Mr. Taylor's claim is forfeited
because defense counsel didn't *label* her objections as a claim of procedural
error during the sentencing hearing. Gov't Br. at 12-13 (complaining that Mr.
Taylor "never *expressly* claimed *procedural* error," "never said that [the
judge's decisionmaking] was so unreasonable as to be *procedurally* defective,"

and "never argued . . . that the court was *procedurally* bound" to sustain her

objections) (emphasis added). In other words, the government seems to think

that, unless counsel speaks the magic word "procedural," any procedural

error is forfeited. But "a party is not required to use any particular language"

to preserve an error. *United States v. Benvie*, 18 F.4th 665, 669 (10th Cir.

2021). Nor is the defendant required to specify whether his objection is

procedural or substantive. *Cf. United States v. Balbin-Mesa*, 643 F.3d 783,

787 (10th Cir. 2011) ("Mr. Balbin-Mesa does not specify whether he intends

to raise a procedural or a substantive challenge to his sentence. Where the

appellant does not specify whether he challenges the procedural or

substantive component of his sentence, we will assess his briefs and

determine the nature of his arguments.") (alteration and quotation marks

omitted). Instead, as stated above, "[a] party may preserve a claim of error by

informing the court . . . of the action the party wishes the court to take, or the

party's objection to the court's action and the grounds for that objection." Fed.

R. Crim. P. 51(b). Mr. Taylor did so.[1]

_____

[1] Just as nothing turns on the fact that defense counsel didn't say "my
objection is procedural," nothing turns on the fact that counsel didn't use the
word "baseline," despite what the government suggests (at 12). The gist of
Mr. Taylor's complaint below was clear—and clearly the same as his claim on
appeal.

In suggesting that Mr. Taylor was required to *declare* his objection to be procedural, the government misunderstands the comment in *United States v. Mendoza* that "[a] party must specifically object to the district court's procedure in order to preserve that issue for review." 543 F.3d 1186, 1191 (10th Cir. 2008). *Mendoza* was *not* saying that a party must tell the court that its objection falls within the procedural category. Rather, it was saying that a party must protest how the sentence "[i]s determined and explained" if the party wants to claim on appeal that there's a problem with how the sentence was determined and explained. *Id.* at 1191 (quoting *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1199 (10th Cir. 2007)). Thus, in *Mendoza*, the government forfeited its complaint that the district court inadequately articulated its reasons for granting a downward variance where the only thing it argued at the sentencing hearing was that a downward variance would result in an overly lenient sentence. *Mendoza*, 543 F.3d at 1191. By contrast, Mr. Taylor hasn't changed theories on appeal. He objected to how the district court was comparing his prior sentence(s) to his new sentence(s), and that's the same thing he is challenging on appeal.

**Finally,** the government contends (at 14) that defense counsel didn't preserve a claim of procedural error because her objections were "directed to the appropriate length of the sentence" and were therefore substantive. But a party's arguments are *always* ultimately directed towards the final outcome;

9

otherwise, they would be moot. The fact that an argument is so directed doesn't make it substantive. For example, when the defendant argued in *United States v. Lente* that the judge needed to consider that an upward variance would result in unwarranted sentencing disparity, that was surely "directed to the appropriate length of the sentence," yet this Court still found that the sentencing judge's failure to consider the disparity factor was procedural error. 647 F.3d 1021, 1032-35 (10th Cir. 2011). Likewise, the defendant's argument in *United States v. Cozad* that the judge could not treat her "open plea" as grounds for a longer sentence was directed to the appropriate length of the sentence, yet this Court still found that it "raise[d] a procedural reasonableness challenge." 21 F.4th 1259, 1262 (10th Cir. 2022). Similarly, Mr. Taylor's objections to the district court's apples-to-oranges comparison between the new § 922(g) sentence and the prior combined sentences were procedural even though they were ultimately aimed at persuading the court to impose a lower sentence. Regardless, all of this is way beyond what Rule 51 requires—a bar defense counsel easily cleared.

## II.    Mr. Taylor's Appellate Claim Is One of Procedural Unreasonableness, Not Substantive Unreasonableness.

The government next contends (at 16-20) that the procedural unreasonableness claim Mr. Taylor has presented on appeal should be recharacterized as a substantive unreasonableness claim—a kind of claim

that's harder to win. But this Court should readily conclude that Mr. Taylor's claim is procedural, not substantive.

A "[s]ubstantive reasonableness" claim "focuses on the length of the sentence" itself and challenges it as either "too long" or "too short." *United States v. Walker*, 844 F.3d 1253, 1255 (10th Cir. 2017). That's not Mr. Taylor's claim. He does not claim that his sentence is per se too long or that a reasonable weighting of the relevant factors requires a shorter one. Nor—contrary to what the government says (at 18)—does Mr. Taylor make the essentially equivalent claim that the district court lacked a "persuasive reason" for imposing a sentence as long as it did.

Instead, Mr. Taylor argues that there was "error[] in the district court's *methodology* for determining his sentence"—i.e., a problem with "the *manner* in which it was determined"—which is a procedural unreasonableness argument. *United States v. Farley*, 36 F.4th 1245, 1250 (10th Cir. 2022) (emphasis added). The defense asked the court to compare apples to apples: the new § 922(g) sentence to the prior § 922(g) sentence. Alternatively, the defense asked the court to compare oranges to oranges: the new aggregate sentencing package to the prior aggregate sentencing package. But the district court improperly compared apples to oranges: the new § 922(g) sentence to the prior aggregate sentencing package. That is a *methodological* problem—and, thus, a procedural unreasonableness problem.

11

The government complains (at 19) that Mr. Taylor is trying to "cloud the line" between substantive and procedural unreasonableness and "disguise" one kind of claim as the other. In reality, though, it's the answer brief that obfuscates the distinction. A substantive unreasonableness claim posits that the very length of the sentence itself is erroneous. A procedural unreasonableness claim posits that the judge made a misstep along the way to arriving at the chosen sentence. Mr. Taylor posits the latter, not the former. It's as simple as that.

The government points out (at 16, 19) that this Court has never previously held that a claim exactly like Mr. Taylor's is procedural. But that's only because (so far as the undersigned can tell) no judge has previously committed the specific methodological error that the judge committed in this case. And the fact that an error is novel doesn't make it substantive. *Cf. United States v. Moore*, 30 F.4th 1021, 1025 (10th Cir. 2022) (finding plain procedural error even where the defendant "provided no precedent from the Supreme Court or the Tenth Circuit" addressing actions like the district court's).

In any event, Mr. Taylor's arguments are analogous to claims at the core of procedural reasonableness review. His argument that 92 months is the wrong benchmark sentence is analogous to a claim that a district court started with the wrong guidelines range, a paradigmatic procedural

12

unreasonableness claim. *See Farley*, 36 F.4th at 1250. And his argument that Judge Moore erroneously refused to take into account the new violation sentence that Judge Kane would be imposing is analogous to a claim that a district court refused to consider a pertinent factor—another claim that's plainly procedural. *See United States v. Cerno*, 529 F.3d 926, 938-39 (10th Cir. 2008).

In short, Mr. Taylor's claim is procedural and cannot be relegated to substantive reasonableness review.

## III.   The District Court's Methodology Was Unreasonable.

The answer brief's third argument (at 20-25) tries to defend the district court's approach as reasonable. But the government fails to confront the fundamental flaw with the district court's methodology: its inconsistency. And the various justifications the government offers for Judge Moore's refusal to consider the extra prison time that Judge Kane was going to impose do not withstand scrutiny.

Primarily, the government's merits argument fails because it proceeds in a piecemeal way that evades the main problem with the district court's methodology: it tallied the entirety of Mr. Taylor's sentence on one end of the equation but refused to do so on the other end. The government argues (at 20-23) that there were permissible reasons for the court to concern itself with the *total* sentence that Mr. Taylor received in 2013. And then the government

13

argues (at 23-25) that there were permissible reasons for the court *not* to concern itself with the total sentence that Mr. Taylor would receive in 2022. But even if each of these moves would be reasonable by itself, the court could not sensibly do both at the same time: It just isn't valid to reason that, because an *entire sentencing package* failed to deter a defendant last time around, *just one component* of a multi-part sentencing package must be longer this time around. That's an unreasonable methodology for determining a defendant's sentence.

In addition, the government fails to offer any viable defense of the district court's refusal to take the second component of Mr. Taylor's 2022 sentence into account.

**First,** the government contends that Judge Moore was not required to mechanically deduct exactly 12 months to account for the additional prison time that Mr. Taylor was expected to receive from Judge Kane. But contrary to what the government repeatedly alleges (at 12, 13, 20, 23-25), that's not Mr. Taylor's position. Rather, Mr. Taylor's claim is more modest: If Judge Moore wanted to treat the 2013 sentences as a package deal, then he also needed to treat the 2022 sentences as a package deal—and thereby "take . . . into account," "consider," or generally "account for" the fact that Mr. Taylor was going to get additional prison time from Judge Kane. Opening Br. at 11, 17. Although the coda to Mr. Taylor's opening brief (at 18) suggested a 12-

month reduction from the sentence the district court otherwise intended to impose, this was merely offered as one *example* of how the court might have arrived at a lower sentence had it deployed a sound methodology. The problem is not that Judge Moore failed to deduct precisely 12 months; it's that he refused to consider in any way the fact that Mr. Taylor would be receiving an additional sentence from Judge Kane. *See* Vol. III at 48-49.

**Second,** the government maintains (at 23-25) that Judge Moore could not possibly take Judge Kane's 2022 sentence into account because "Judge Kane had not yet imposed a sentence" and "Judge Moore was not clairvoyant." This argument fails because (a) sentencing courts routinely make predictive judgments about things that haven't happened yet and, (b) in practice, Judge Moore knew full well that Judge Kane was going to impose additional prison time.

It's commonplace for sentencing courts to consider things that are likely to happen in the future. For example, 18 U.S.C. § 3553(a)(2)(C) requires courts to anticipate the likelihood that the defendant will commit crimes in the future, and § 3553(a)(2)(B) requires courts to predict how different sentences might alter the defendant's willingness to abide by the law going forward. To take another example, 18 U.S.C. § 2259(c)(2) requires courts to calculate a restitution amount that compensates the victim for "any costs . . . that are reasonably projected to be incurred in the future." And in

15

setting a fine, courts must consider both the future income a defendant is expected to earn (18 U.S.C. § 3572(a)(1)) and the future costs the government is expected to incur as a result of imprisoning and/or supervising the defendant (§ 3572(a)(6)). The Sentencing Guidelines, too, sometimes require sentencing courts to make predictions about future events. A common sentencing enhancement, for instance, turns on whether a victim's injuries "are likely to be permanent." U.S.S.G. § 1B1.1 n.1(K). More to the point, the Guidelines require courts to consider whether "a state term of imprisonment is *anticipated to* result from" the same conduct for which the court is currently sentencing the defendant. U.S.S.G. § 5G1.3(c) (emphasis added). In short, sentencing courts frequently take into account things that haven't happened yet—including, specifically, sentences that they anticipate another court is going to impose. Thus, the mere fact that Judge Kane had not yet imposed the additional imprisonment was no reason to disregard it.

And it was hardly "speculative" (Gov't Br. at 24) that Judge Kane was going to impose additional prison time. Practically speaking, he was certain to do so. When Mr. Taylor violated his supervised release in 2013, Judge Kane imposed 12 months' imprisonment for that violation on top of the new criminal sentence—and did so on the ground that it's his "policy" to impose additional imprisonment for supervised release violations. SRV, Vol. III at 35. There was never any realistic possibility that Judge Kane was going to be

16

*more lenient* after Mr. Taylor *again* committed the same "breach of trust with the probation service." *Id*. And we now know that, indeed, Judge Kane doubled the prior sentence, imposing a consecutive 24-month prison term for Mr. Taylor's new supervised release violation.

More importantly, Judge Moore understood at the time that Judge Kane would impose additional imprisonment. He explicitly said so. When the prosecutor tried to claim that the prospect of more prison time for the new supervised release violation was "speculation," Judge Moore pushed back: "I mean, look. Do I expect that Judge Kane would give [Mr. Taylor] less than he gave him before? It would surprise me if he did so." Vol. III at 31. Later, when defense counsel asserted that "we can all safely assume Judge Kane is going to impose some prison time," Judge Moore interjected to agree: "I would be shocked if he did not." *Id*. at 33. Contrary to what the government asserts (at 24), Judge Moore never said that he didn't *know* that Judge Kane was going to impose additional imprisonment; he said he didn't "*care*"—i.e., would not take that fact into account. Vol. III at 48-49 (emphasis added). Given that Judge Moore had decided to use the entire sentencing package from 2013 as the benchmark, this was unreasonable.[2]

_____

[2] Of course, if Judge Moore *had* supposed it impractical to factor Mr. Taylor's new violation sentence into his analysis, there was another sensible option: to use the prior § 922(g) sentence that Judge Kane had imposed (80 months) as

**Lastly,** the government proposes that it would be legal error for a court to adjust one sentence based on another sentence. Gov't Br. at 23-24. But this is a nonstarter. Courts adjust one sentence to account for another sentence all the time. *See Dean v. United States*, 581 U.S. 62, 67 (2017) (holding that "a court imposing a sentence on one count of conviction [may] consider sentences imposed on other counts" for the purpose of ensuring that the "aggregate prison term" is parsimonious); *United States v. Hicks*, 146 F.3d 1198, 1202 (10th Cir. 1998) (recognizing that this is what courts typically do). Indeed, the Sentencing Guidelines explicitly recognize that a court may need to "adjust the sentence" it imposes to account for a sentence imposed by a different court, U.S.S.G. § 5G1.3(b)(1)—and, as noted, the Guidelines even specify that courts should take into account sentences that they "anticipate[]" another court is going to impose, U.S.S.G. § 5G1.3(c).

The government's argument that this standard practice is impermissible rests on a misreading of 18 U.S.C. § 3553(a)(2). According to the government (at 23), because § 3553(a)(2) provides that a court should consider "the need for the sentence imposed" to deter and incapacitate the defendant, the court is required to restrict its analysis to whether the court's

---

the benchmark—just as defense counsel suggested from the start. Vol. III at 32-34.

*own* sentence, in isolation, would be adequate to deter and incapacitate. But this doesn't follow. If a sentence imposed by a *different* court will make a substantial contribution towards deterrence and incapacitation, then there's no "need for the sentence imposed" by *this* court to do the entirety of the work by itself. Thus, the language of § 3553(a)(2) actually indicates that judges *should* take other sentences into account.

In support of its misreading of § 3553(a)(2), the government offers an analogy to *United States v. Morgan*, 635 F. App'x 423 (10th Cir. 2015), but that case is obviously inapt. In *Morgan*, this Court rejected a district court's ruling that a corrupt politician convicted of bribery should get zero prison time because he had already been punished enough by the stress of the prosecution and the loss of his wealth and reputation. *Id*. at 444-52. *Morgan* identified two problems with the district court's approach: (1) a defendant is supposed to be punished by his sentence, not by the incidental consequences of being prosecuted, and (2) granting leniency on grounds like those cited by the district court impermissibly favors criminals with privileged backgrounds. *Id*. at 444-46. Neither of those problems occurs when a district court recognizes that another, anticipated term of imprisonment for the same or related conduct is a cognizable component of the defendant's overall sentence and should be factored into its analysis.

* * *

19

The district court's methodology—using the whole 2013 sentence as a benchmark for only part of the 2022 sentence—does not make sense. Nothing in the answer brief supports treating such a methodology as reasonable.

## IV. The Government Has Not Shown That the Procedural Error Is Harmless.

This Court should also reject the government's fourth argument (at 26-29): that any error was harmless. Because Mr. Taylor preserved his procedural unreasonableness claim, a resentencing is required unless the record "clearly indicates the district court would have imposed the same sentence" even if it had not committed the error. *United States v. Eddington*, 65 F.4th 1231, 1243 (10th Cir. 2023). And this record does not clearly indicate that Mr. Taylor's sentence would have been the same but for the district court's methodological mistake.

To the contrary, the district court placed great weight on the misguided theory that half of the sentencing package imposed in 2022 needed to be longer than the whole sentencing package imposed in 2013.

One of the first things the district court did after the sentencing hearing began was to issue an extended oral correction of the presentence report in order to establish that the sentence imposed in 2013 was 92 months (the entire package), not just 80 months (the standalone § 922(g) sentence). Vol. III at 7-10. Then, during its subsequent colloquy with defense counsel,

the court expressed consternation that Mr. Taylor had reoffended after serving 92 months in prison, opined that criminal persistence should not be rewarded with less prison time, and explained that this was why the court had taken the time to clarify the length of Mr. Taylor's previous sentence. *Id.* at 32-33, 40-41.

At the same time, the court made emphatically clear that it would not give any consideration to the additional prison time it knew Judge Kane was going to impose for the same conduct later that month. Vol. III at 31 ("That's not my concern"); *id.* at 49 ("I don't care.").

The court then told defense counsel (repeatedly) that, given these parameters, her main job was to explain why the court should impose fewer than 92 months' imprisonment for Mr. Taylor's new § 922(g) conviction. Vol. III at 47 ("[The defense's request is] less than the 92. Why?"); *id.* at 48 ("Why should I give him less than that [i.e., 92 months]?"); *id.* at 48-49 ("Why should I give him less than 92 months of imprisonment?"); *id.* at 49 ("Why should I give him less than the 92 months?"). And when the court ultimately imposed a sentence of 108 months' imprisonment, it explicitly incorporated what it had previously "laid . . . out" and "stated in my discussion with counsel" as among the justifications for that sentence. Vol. III at 58, 62.

In short, far from "clearly indicat[ing]" that the district court would have imposed the same sentence regardless, *Eddington*, 65 F.4th at 1243, the

record instead affirmatively indicates that the district court's methodological error *did* affect its sentencing decision.

The government's arguments to the contrary all miss the mark.

First, the government maintains that the methodological error was just "one consideration among many in the district court's § 3553(a) analysis" and that the court also gave other reasons for imposing a lengthy sentence, including the strong societal interest in incapacitation and the notion that Mr. Taylor's record is analogous to defendants sentenced under the Armed Career Criminal Act (ACCA).[3] Gov't Br. at 28-29. It's true that the district court said a lot of things, but one of the *main* things it said was that Mr. Taylor's new § 922(g) sentence needed to be substantially longer than the total 2013 sentence because "92 months . . . rolled off his back like water off a duck." Vol. III at 49; *see also id*. 7-10, 31-34, 40-41, 47-48, 58, 62. That this was not the court's *only* consideration is hardly surprising and fails to show that the error was harmless. In fact, even on plain-error review, where the

_____

[3] The answer brief could be read to imply (at 6) that Mr. Taylor was formally eligible for a 15-year sentence under the ACCA. But the government acknowledges that Mr. Taylor sustained a third predicate conviction only after he committed the instant § 922(g) offense, and every court of appeals to consider the question has ruled that a conviction sustained after a § 922(g) violation does not count as a "previous conviction" for purposes of the ACCA. *See United States v. Pressley*, 359 F.3d 347, 351 (4th Cir. 2004) (collecting authority). Mr. Taylor was not ACCA eligible.

burden is on the defendant, a procedural error affecting only one of several significant § 3553(a) considerations is still treated as prejudicial. *See, e.g.*, *Farley*, 36 F.4th at 1253 (holding that the defendant established prejudice "[b]ecause one of the district court's three key considerations was predicated on an error").

Relatedly, the government claims that the methodological error in question "is inherently less likely to affect the ultimate sentence" than something like a miscalculation of the guidelines range. Gov't Br. at 28. But what matters when assessing prejudice is what mattered to the district court. *See, e.g.*, *Farley*, 36 F.4th at 1253. And Judge Moore was far more preoccupied with the 92-month figure than with the guidelines range. It follows that, in *this* case, the error claimed by Mr. Taylor is more consequential than a miscalculation of the guidelines range would have been.

Next, the government contends that the error was harmless because the district court didn't rely on the 2013 sentencing package to *choose* the sentence it imposed but, instead, "relied on the prior sentences primarily to *reject* Taylor's arguments for a lower sentence." Gov't Br. at 27 (emphasis added). But this is mere semantics: A reason to reject a lower sentence is functionally the same thing as a reason to choose a higher sentence. They're just two sides of the same coin—and equally inscribed with prejudice.

Finally, the government proposes (at 26-27) that any talk of a 92-month baseline made no difference in the end because the district court ultimately landed on a 108-month sentence through a different route: by (1) reasoning that the record called for a sentence at or near the 120-month statutory maximum but then (2) giving Mr. Taylor a 12-month credit for accepting responsibility. Despite what the government asserts, however, there's no reason to treat this analysis as "independent of" the error (Gov't Br. at 27). To the contrary, it's easy to see how the district court's methodological mistake may have affected the analysis described—and thereby affected the ultimate sentence.

For one thing, when the district commented that "this record, as I've laid it out, warrants [a sentence] at or near [the] statutory maximum," a key part of "this record"—one the court itself identified as crucial—is that Mr. Taylor had reoffended after previously receiving a 92-month sentence. Had the court instead focused only on the prior § 922(g) sentence that Mr. Taylor received in 2013, and thus treated the baseline as 80 months rather than 92, then it might have concluded that (absent acceptance of responsibility) the record warranted a sentence of, say, 100 or 110 months—rather than 120. *See generally* Mark W. Bennett, *Confronting Cognitive "Anchoring Effect" and "Blind Spot" Biases in Federal Sentencing: A Modest Solution for Reforming a Fundamental Flaw*, 104 J. Crim. L. & Criminology 489, 495-511 (2014). If the

24

court then gave Mr. Taylor the 12-month discount for accepting responsibility, it could have landed on a final sentence of, say, 88 or 98 months. At a minimum, nothing in the sentencing transcript "clearly indicates" (*Eddington*, 65 F.4th at 1243) that using an 80-month benchmark wouldn't have affected the result along these lines.

Alternatively, had Judge Moore chosen to consider the additional imprisonment that Judge Kane was expected to impose, then he might have adjusted Mr. Taylor's sentence downward to account for that additional imprisonment. In other words, if Judge Moore had started from the premise that Mr. Taylor's *total* sentence should be 120 months—but then considered *both* Mr. Taylor's acceptance of responsibility *and* the prison time he was due to get from Judge Kane—Judge Moore might have first deducted the 12 months for acceptance of responsibility and then deducted an *additional* period of time (whether 18 months, 6 months, or something else) in recognition of the fact that he was only responsible for imposing part of Mr. Taylor's total sentence. In that case, the § 922(g) sentence that Judge Moore imposed might have been 90 months, or 102 months—or in any event something less than 108 months. Again, the sentencing transcript doesn't *rule out* the possibility that things might have played out this way, and that's enough to hold that the government has not met its burden to show that the error was harmless.

25

## Conclusion

For the reasons above, as well as those set forth in the opening brief, this Court should vacate Mr. Taylor's sentence as procedurally unreasonable and remand for resentencing.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender

JOSH LEE
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, Colorado 80202
(303) 294-7002
josh.lee@fd.org
Counsel for Appellant

**Certificate of Compliance**

I hereby certify that, to the best of my knowledge and belief, formed after a reasonable inquiry, this brief is proportionally spaced and contains 6047 words and therefore complies with the applicable type-volume limitations.

JOSH LEE
Assistant Federal Public Defender